IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANTE LOVE,

  Plaintiff,       No. CIV S-09-1086 WBS GGH P

 vs.

EILYA MODHADDAM,

  Defendant.      <u>FINDINGS & RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

  Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendant Dr. Eilya Modhaddam's motion for summary judgment filed on July 22, 2010. Plaintiff filed an opposition on August 13, 2010. For the reasons that follow, the court recommends that the motion be granted and this case closed.

II. <u>Complaint</u>

  This case is proceeding on the first amended complaint (FAC), filed on June 11, 2009. Dr. Eilya Modhaddam is the sole defendant in this case. Plaintiff alleges that he was taken to the medical clinic after being sprayed with pepper spray, and due to documented heart defects, plaintiff believed he was having a heart attack. Plaintiff alleges that defendant only treated plaintiff for the pepper spray and ignored plaintiff's complaints of heart problems. Plaintiff

1

states that defendant's deliberate indifference could have resulted in plaintiff's death and caused further deterioration of his heart.

III. Motion for Summary Judgment

Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

1    (1986).  In attempting to establish the existence of this factual dispute, the opposing party may
2    not rely upon the allegations or denials of its pleadings but is required to tender evidence of
3    specific facts in the form of affidavits, and/or admissible discovery material, in support of its
4    contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,
5    106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is
6    material, i.e., a fact that might affect the outcome of the suit under the governing law, see
7    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.
8    Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the
9    dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
10   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

11              In the endeavor to establish the existence of a factual dispute, the opposing party
12   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
13   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
14   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
15   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
16   genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.
17   56(e) advisory committee's note on 1963 amendments).

18              In resolving the summary judgment motion, the court examines the pleadings,
19   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
20   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
21   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
22   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.
23   at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
24   obligation to produce a factual predicate from which the inference may be drawn.  See Richards
25   v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902
26   (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

1 simply show that there is some metaphysical doubt as to the material facts . . . . Where the record
2 taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
3 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

4         On July 29, 2009, the court advised plaintiff of the requirements for opposing a
5 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154
6 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.
7 1988).

8         The above advice would, however, seem to be unnecessary as the Ninth Circuit
9 has held that procedural requirements applied to ordinary litigants at summary judgment do not
10 apply to prisoner pro se litigants. In Thomas v. Ponder, 611 F.3d 1144 (9th Cir. 2010), the
11 district courts were cautioned to "construe liberally motion papers and pleadings filed by *pro se*
12 inmates and ... avoid applying summary judgment rules strictly." Id. at 1150. No example or
13 further definition of "liberal" construction or "too strict" application of rules was given in Ponder
14 suggesting that any jurist would know inherently when to dispense with the wording of rules.
15 Since the application of any rule which results in adverse consequences to the pro se inmate
16 could always be construed in hindsight as not liberal enough a construction, or too strict an
17 application, it appears that only the essentials of summary judgment, i.e., declarations or
18 testimony under oath, and presentation of evidence not grossly at odds with rules of evidence,
19 apply in this dichotomous litigation system where one side must obey the written rules and the
20 other side substantially absolved from doing so.

21 IV.  Undisputed Facts

22         The following of defendant's undisputed facts (DUF) are either not disputed by
23 plaintiff, or following the court's review of the evidence submitted, have been deemed
24 undisputed:

25         Defendant was a staff physician at the relevant time. Declaration of Dr.
26 Modhaddam (Decl.) at 1. Plaintiff has suffered from serious heart related conditions and heart

disease since birth. DUF #1. Plaintiff has underdeveloped heart valves that lead to his heart having to work harder to pump blood due to leakage into the heart chamber. DUF #1; Plaintiff's Deposition (Depo.) at 17. Plaintiff was approximately 32 years-old on the day at issue. Depo. at 18. On February 7, 2008, plaintiff was exposed to OC spray used to quell a riot, though plaintiff was not part of the riot. DUF #2. As a result of the OC spray, plaintiff was having difficulty breathing and experienced chest pains, and was promptly taken to the medical clinic. DUF #2, 3.

Upon arriving at the clinic, plaintiff was immediately placed on oxygen for 45 minutes and staff took his vital signs. DUF #3, 4. Plaintiff's vitals were normal with his blood pressure at 130/75, pulse 76, temperature 100 and respiration 16. Dec. at 1. Plaintiff was then seen by defendant and plaintiff stated that he had chest pain, shortness of breath and he was having a heart attack. DUF #4. Defendant examined plaintiff and reviewed his medical records.

To treat the shortness of breath, defendant provided Benadryl, Solu-Medrol, Prednisone and Albuterol. DUF #6. For the chest pain, defendant prescribed Nitroglycerin. Id. At a future point, plaintiff ceased taking the Albuterol, on the advice of another inmate. DUF #7. After being given these medications, plaintiff remained in the clinic for another 30 minutes. DUF #8. Plaintiff was then transferred to a different infirmary for observation for another 30 to 45 minutes before returning to his cell. Id.

An hour after returning to his cell, plaintiff was completely free of chest pain. Depo. at 51.

Since February 7, 2008, none of plaintiff's treating physicians have indicated that medications prescribed or the treatment he received was incorrect. DUF #10. No physicians have indicated that plaintiff suffered a heart attack on February 7, 2008. Id.

Plaintiff has been suffering from chest pain his entire life and has been constantly seen by doctors. Depo. at 39-40. From April 2008 to December 2009, plaintiff received a great deal of additional medical treatment including surgery and a pace maker was implanted.

\\\\\

V. <u>Disputed Facts</u>

Plaintiff states that he did suffer a heart attack and an EKG should have been performed and he should have been taken to an outside hospital. Depo. at 47-48. Plaintiff states that on every other occasion when he has chest pains other hospitals give him an EKG. Depo. at 48. Plaintiff appears to argue that the additional medical care required between April 2008 and December 2009, was in part caused by defendant's actions. Plaintiff also states that it is possible that the medication defendant prescribed caused additional problems with his heart. Depo. at 21.

VI. <u>Eighth Amendment Claim</u>

<u>Legal Standard</u>

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., <u>Wood v. Housewright</u>, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled on other grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

1        In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court defined a very
2 strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of
3 course, negligence is insufficient. Farmer, 511 U.S. at 835. However, even civil recklessness
4 (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should
5 be known) is insufficient. Id. at 836-37. Nor is it sufficient that a reasonable person would have
6 known of the risk or that a defendant should have known of the risk. Id. at 842.
7        It is nothing less than recklessness in the criminal sense – subjective standard –
8 disregard of a risk of harm of which the actor is actually aware. Id. at 837-42. "[T]he official
9 must both be aware of facts from which the inference could be drawn that a substantial risk of
10 serious harm exists, and he must also draw the inference." Id. at 837. Thus, a defendant is liable
11 if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by
12 failing to take reasonable measures to abate it." Id. at 847. "[I]t is enough that the official acted
13 or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. If the risk
14 was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42.
15 However, obviousness per se will not impart knowledge as a matter of law.
16        Also significant to the analysis is the well established principle that mere
17 differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth
18 Amendment violation. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Franklin v.
19 Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). However, a physician need not fail to treat an
20 inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of
21 Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical
22 condition, even if some treatment is prescribed, may constitute deliberate indifference in a
23 particular case. Id.
24        Additionally, mere delay in medical treatment without more is insufficient to state
25 a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766
26 F.2d 404, 407 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is

no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990). A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d at 1060. In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." Id. at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants. The dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

Analysis

The primary issues of this case are if plaintiff had a heart attack or not on February 7, 2008, and if defendant's treatment or the failure to treat caused plaintiff's heart condition to worsen. As defendant accurately points out, plaintiff arrived at the clinic complaining of shortness of breath and chest pain. It is undisputed that approximately two hours later, plaintiff returned to his cell feeling fine. Plaintiff is hard pressed to show that defendant demonstrated deliberate indifference in successfully treating plaintiff's complaints.

Plaintiff states the defendant ignored plaintiff's complaints of a heart attack and stated it was just asthma. Regardless if this occurred, it is undisputed that defendant provided

8

treatment for the shortness of breath and the chest pain. To treat the chest pain, defendant provided Nitroglycerin which according to defendant works by widening the blood vessels which allows more blood to flow more easily through them and reduces the work that the heart has to do to pump blood, which reduces the oxygen needed by the heart and helps prevent chest pain. Decl. at 2. This treatment appears to help the underlying problems of plaintiff's heart condition.

Plaintiff has presented no evidence that he actually suffered a heart attack, other than his own conclusion, with no evidentiary support. However, even assuming arguendo that he did suffer a heart attack, the treatment provided by defendant worked quite successfully. While plaintiff would have preferred an EKG, he does not state how that would have helped. While plaintiff would have preferred to have been taken to an outside hospital, there did not seem to be any need, as plaintiff was fine within a few hours.

The court also notes that plaintiff repeatedly states that he has had chest pain all his life, so there is no indication that this episode of chest pain was any more severe then what plaintiff normally experiences. Ultimately, plaintiff disagrees with the medical care he received but it is well established that this will not support an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Furthermore, plaintiff's many medical exhibits do not support his claim that defendant's course of treatment exacerbated his preexisting condition. A medical report from August 2007, six months prior to the instant incident, states that a fixed perfusion at plaintiff's low anterior wall is consistent with a prior myocardial infarction. Opposition to Summary Judgment (Opp.), Exh. F at 3. Plaintiff points to a medical report from April 2008, two months after the incident that states there was an abnormal aneursymal segment seen in the anterior wall of the left ventricle. Opp., Exh. G at 1. Plaintiff also stated in his deposition that he was treated at UC Davis hospital in April 2008, and a doctor stated that scar tissue in plaintiff's heart could have been as a result of a heart attack or the open heart surgery plaintiff had as a child. Depo. at

\\\\\

38.[1] Plaintiff has also stated that he has suffered other heart attacks prior to this incident. If a heart attack did cause the scar tissue, it is not clear which heart attack was the cause.

Plaintiff has failed to demonstrate that what may or may not have been a heart attack in February 2008, led to observations regarding his heart in April 2008. The observations made by doctors in April 2008 are similar to observations made prior to the incident and there is no indication that the events of February 7, 2008, led to all the additional medical treatment plaintiff received.

Plaintiff notes that he was given an MRI and an EKG while being treated in April 2008 for chest pain. While this is accurate, there is no indication that these tests uncovered any new problems that would have been discovered earlier. Defendant cites a portion of the Supreme Court's opinion in Estelle v. Gamble, that is instructive in the instant case:

> But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. 97, 107, 97 S.Ct. 285 (1976).

Ultimately, plaintiff has failed to set forth allegations that defendant's treatment rose to the level of deliberate indifference. It is undisputed that defendant treated plaintiff's symptoms, just not to plaintiff's satisfaction, which cannot support an Eighth Amendment claim.

For all these reasons defendant's motion for summary judgment should be granted and this case closed.

VII. Qualified Immunity

Because the court has found that the conduct alleged by plaintiff does not state a constitutional deprivation, the court need not address defendant's argument for qualified immunity.

---

[1] This statement is only available from plaintiff's deposition, so the court does not view it as undisputed.

1  Accordingly, IT IS HEREBY RECOMMENDED that defendant's July 22, 2010,
2 motion for summary judgment (Doc. 40), be granted and this case closed.

3  These findings and recommendations are submitted to the United States District
4 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
5 days after being served with these findings and recommendations, any party may file written
6 objections with the court and serve a copy on all parties.  Such a document should be captioned
7 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
8 shall be served and filed within seven days after service of the objections.  The parties are
9 advised that failure to file objections within the specified time may waive the right to appeal the
10 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11 DATED: 10/22/2010

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH: AB
love1086.sj